# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 13-111 (JRT/LIB) |
| Plaintiff, | **ORDER ADOPTING REPORT & RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| JAMES PATRICK NEEDHAM, | |
| Defendant. | |

Laura M. Provinzino, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Douglas Olson, Assistant Federal Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

Defendant James Patrick Needham faces one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). (Indictment, May 6, 2013, Docket No. 1.) Needham moved to suppress evidence gathered at his residence on the ground that the search warrant failed to establish probable cause. (Mot. to Suppress, May 21, 2013, Docket No. 21.) United States Magistrate Judge Leo I. Brisbois issued a Report & Recommendation ("R&R") recommending that the Court deny Needham's motion. (R&R, July 8, 2013, Docket No. 33.) Needham filed timely objections to the R&R. (Objections, July 22, 2013, Docket No. 35.) Because the Court finds that the

issuance of the warrant complied with the Fourth Amendment, the Court will overrule Needham's objections and adopt the R&R.

## BACKGROUND

Needham's motion to suppress involves evidence collected pursuant to a search warrant that was issued by United States Magistrate Judge Mary Kay Klein on July 14, 2011, and executed on July 21, 2011. Special Agent Joe A. Ogden of the Federal Bureau of Investigation provided the sworn affidavit that accompanied the application for the warrant, the purpose of which was to search Needham's residence at 15985 Crossroads Avenue, Red Lake, Minnesota, and seize evidence related to child pornography. (Aff. of Joe A. Ogden ¶¶ 4-5, July 14, 2011.)[1]

The affidavit explains that in approximately August 2010, the FBI began investigating numerous reports of child pornography being posted on various groups on the social networking platform GROU.PS. (*Id.* ¶ 12.) Federal search warrants were issued to discover information relating to twelve groups that contained child pornography, including a group entitled http://grou.ps/boy2kid. (*Id.* ¶¶ 13-14.) GROU.PS provided the Internet Protocol ("IP") address from which each piece of child pornography was posted, and administrative subpoenas were sent to various internet service providers to identify which individual subscribers were assigned the IP addresses associated with the child pornography. (*Id.* ¶¶ 15-16.) The data revealed that a GROU.PS member under the username "Rezchub61" posted eleven images, some of

---

[1] The United States submitted the warrant application as an exhibit at the hearing before the Magistrate Judge. (*See* Minute Entry, June 19, 2013, Docket No. 27.) The United States submitted the same exhibit to the Court electronically at the Court's request.

which appeared to be child pornography, to the website on August 4, 2010, from the IP address 209.191.208.245 (the "209 IP address"). (*Id.* ¶¶ 17-18.)

Publicly available information revealed that the 209 IP address was assigned to Paul Bunyan Communications ("Paul Bunyan"). (*Id.* ¶ 18.) Investigators served an administrative subpoena on Paul Bunyan and learned that the 209 IP address was used by multiple Paul Bunyan customers. (*Id.*) To determine which Paul Bunyan customer uploaded the content in question, investigators sought to discover whether the 209 IP address ever connected with an IP address assigned to GROU.PS. (*Id.* ¶ 19.) In response to another administrative subpoena, Paul Bunyan determined that the 209 IP address connected to the IP address 208.43.134.240 (the "208 IP address"), which was the IP address assigned to GROU.PS. (*Id.* ¶ 20.) During the dates and times that content had been uploaded by rezchub61, Paul Bunyan's records identified a single customer, James Needham, that connected to the 208 IP address from the 209 IP address. (*Id.*) Paul Bunyan's records further indicated that Needham accessed the 208 IP address from the 209 IP address multiple times on August 4, 2010, which corresponded to the eleven images posted by rezchub61 to GROU.PS. (*Id.* ¶ 21-22.)

Pursuant to federal search warrants, GROU.PS also provided the email account associated with the username "rezchub61," which was supplied by the user when the user created the GROU.PS account. (*Id.* ¶¶ 14-15.) That email account was rezchub61@yahoo.com. (*Id.* ¶ 23.) Administrative subpoenas were sent to Yahoo! to identify the accountholder and access logs for the email account rezchub61@yahoo.com. (*Id.*) Yahoo!'s records indicated that Rick Needham was the listed accountholder for the

email address rezchub61@yahoo.com, but that James Needham was the listed accountholder for an alternative email address as "redchub61@yahoo.com." (*Id*.)

Paul Bunyan's records did not show a physical address for James Needham, but did indicate that Needham lived on the Red Lake Indian Reservation and that Needham's mailing address was a post office box in Red Lake, Minnesota 56671. (*Id*. ¶¶ 21, 24.) Paul Bunyan provided a map depicting their service area, which showed Needham's residence was on Crossroads Avenue. (*Id*. ¶ 24.) On May 25, 2011, a Red Lake Criminal Investigator spoke with James Needham at his known residence at 15985 Crossroads Avenue in Red Lake, Minnesota. (*Id*. ¶ 25.) James Needham told the investigator that he lived in the residence at that address. (*Id*. ¶ 25.) The Red Lake Director of Tribal Engineering also informed Special Agent Ogden that James Needham lived in a modular home at 15985 Crossroads Avenue. (*Id*. ¶ 26.)

On the basis of this information, the magistrate judge issued the warrant on July 14, 2011, and the warrant was executed on July 21, 2011. Officers seized a computer, a laptop, a floppy disk, and a Paul Bunyan bill from James Needham's residence.

## ANALYSIS

I.  **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court may refer a motion to suppress evidence in a criminal case to a magistrate judge for proposed findings of fact and recommendations. The Court reviews *de novo* the portions of the R&R to which a party objects. *See* 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b).

In order to comply with the Fourth Amendment, a search warrant may issue only upon a finding of probable cause. *See United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). Probable cause exists when, "in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotation marks omitted); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place."). When the issuing magistrate judge "relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827 (internal quotation marks omitted). The probable cause determination of the issuing magistrate judge "'should be paid great deference by reviewing courts.'" *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *Gates*, 462 U.S. at 236). The Court's duty is to ensure that there was a "substantial basis" for the conclusion that probable cause existed. *See Gates*, 462 U.S. at 238-39.

## II. NEEDHAM'S OBJECTIONS

Needham's objections to the R&R are identical to the arguments Needham made in his memorandum in support of his motion to suppress. Needham contends that the warrant was insufficient to establish probable cause because (1) the explanation of how investigators connected Needham to the uploads is overly conclusory and confusing; and

(2) the basis for the warrant was a single series of uploads that occurred almost a year prior to the application. Because the Court finds that the warrant was supported by probable cause, the Court will overrule Needham's objections.

First, the Court concludes that the facts in the affidavit linking Needham to the uploads in question are sufficiently detailed and not overly conclusory. The affidavit explained how investigators utilized various sources of information to develop their strong suspicion that Needham was "rezchub61," the GROU.PS user who uploaded the images. Those sources of information included identifying information rezchub61 provided to GROU.PS, identifying information associated with the Yahoo! email address that was linked to the rezchub61 username, and identifying information that Paul Bunyan provided based on the IP addresses associated with the sexually explicit postings. The affidavit explains that investigators learned from Paul Bunyan that "[d]uring the date and times of the uploads by rezchub61, Paul Bunyan's customer James Needham was the only person identified as connecting to . . . the IP address assigned to GROU.PS." (Ogden Aff. ¶ 20.) While this statement does contain the "conclusion" that Needham was connected to the relevant IP addresses, the affidavit as a whole is not such that the issuing magistrate judge's probable cause determination was a "mere ratification of the bare conclusions of others." *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007) (internal quotation marks omitted). The affidavit did not necessarily need to explain exactly how Paul Bunyan was able to conclude that Needham was the only customer connected to the relevant IP addresses at the relevant times. The affidavit's description of various responses to administrative subpoenas gave the issuing magistrate a substantial

- 6 -

basis for making the independent determination that probable cause existed. *Gates*, 462 U.S. at 238-39.

Second, the Court concludes that the issuing magistrate judge's probable cause determination was not erroneous even though it was based on a single series of uploads. Needham contends that someone else could have accessed the same IP address or the images might have been uploaded from a portable device that would not be found at the home. However, a warrant application does not have to establish beyond a reasonable doubt that evidence of a crime will be discovered. As explained above, the application simply must establish a "fair probability" that evidence of a crime will be discovered, and the Court's review is limited to determining whether the issuing magistrate judge had a "substantial basis" for deciding that such a fair probability exists. *See Gates*, 462 U.S. at 238-39. The Court concludes that the affidavit, which linked Needham to the username that uploaded the series of images, established at least a fair probability that evidence of a crime would be found on computing devices at Needham's residence. *Cf. United States v. McArthur*, 573 F.3d 608, 613-14 (8th Cir. 2009) (upholding search of home computer equipment based on discovery of a single photograph in a suspect's wallet).

Finally, the Court concludes that the evidence presented in Ogden's affidavit was not stale. "'There is no bright-line test for determining when information in a warrant is stale.'" *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010) (quoting *United States v. Pruneda*, 518 F.3d 597, 604 (8th Cir. 2008)). Whether information is stale depends on the circumstances of the case and the nature of the crime involved. *Lemon*, 590 F.3d at 614. A lapse of time is particularly unimportant if there is reason to believe that the

property in question is not likely to have been destroyed or dissipated. *Id.* Here, the lapse of time was approximately one year. The Eighth Circuit has upheld search warrants where the lapse of time was even greater. *See id.* at 614-15 (eighteen months). Further, Ogden averred that child pornography collectors rarely dispose of their sexually explicit materials. (Ogden Aff. ¶ 10(f); *see also McArthur*, 573 F.3d at 613-14.) Therefore, the Court concludes that despite the approximately one-year gap between the uploading of the images and the application for the search warrant, the issuing magistrate judge had a substantial basis for determining that there was a fair probability that evidence of a crime would be found at Needham's residence. *Gates*, 462 U.S. at 238-39.[2]

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Defendant's objections [Docket No. 35] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated July 8, 2013 [Docket No. 33]. Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress [Docket No. 21] is **DENIED**.

DATED: August 26, 2013            ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                   United States District Judge

---

[2] Because the Court concludes that the warrant was supported by probable cause, the Court need not consider whether the good faith exception created by *United States v. Leon*, 468 U.S. 897 (1984), would provide an additional basis for denying Needham's motion to suppress.